IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
ROMELL R. CARTER,              )
                               )
       Plaintiff,              )
                               )
   v.                          )    No. 08 C 1673
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
       Defendant.              )
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff Romell Carter ("Plaintiff") brings this action under the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final decision of the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA"). The Commissioner's decision granted partial benefits for a one-year period, but found plaintiff was not entitled to a period of disability and Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") after July 15, 2000. Plaintiff filed the pending motion for summary judgment. For the reasons set forth below, the motion is denied.

I.

Plaintiff applied for benefits on December 28, 2000 due to a work injury that left him with a crushed right foot. The claim, first reviewed by a state agency for the Commissioner, was denied initially and again on reconsideration. Plaintiff appealed, requesting a new hearing in front of an Administrative Law Judge

("ALJ"). The appeal and new hearing were granted.

On August 23, 2002, after initial and supplemental hearings, ALJ Templin determined that plaintiff had been disabled for about a year, but that his medical health had since improved. As a result, he only received partial benefits. Plaintiff appealed, but the hearing tapes from ALJ Templin's hearings could not be located. Because the hearing tapes could not be reviewed, the Appeals Council vacated and remanded plaintiff's claim for a new hearing, this time in front of a different ALJ.

On January 27, 2006, after initial and supplemental hearings, ALJ Cropper found, like ALJ Templin, that plaintiff was disabled for a period of time and then improved, limiting his entitlement to partial benefits. Plaintiff appealed for a third time, but this time, the SSA misplaced his entire claim file. Because the entire file was lost, on August 23, 2007, the Appeals Council vacated ALJ Cropper's decision and remanded the case for a new hearing; however, before a new hearing was scheduled, the missing file was located and the Appeals Council re-opened their review of plaintiff's appeal. The August 23, 2007 order was vacated and, on January 26, 2008, a new order issued denying the request for review of ALJ Cropper's decision. As a result, ALJ Cropper's January 27, 2006 decision became the final decision of the Commissioner. Plaintiff then initiated this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.

Plaintiff sustained a severe crushing injury to his right foot while working as a cargo handler for Northwest Airlines at O'Hare Airport on July 8, 1999. He underwent open reduction surgery with internal pin fixation to the second, third, and fourth metatarsals and fixed closed reduction of the fifth metatarsal at the base with right foot decompression. A second surgery was performed in November 1999 to remove the hardware placed in his foot during the first surgery. Plaintiff then spent two weeks in rehabilitation, where he received some orthotics, Vioxx for pain, and a cane. Sometime later, another hospital prescribed Neurontin to plaintiff for pain. Plaintiff participated in an outpatient chronic pain management program, but was discharged after two weeks due to poor compliance and motivation. Plaintiff was physically able to perform at least sedentary work by July 2000.

In November 2001, plaintiff went to the emergency room at Cook County hospital with depression and suicidal ideations; he was hearing voices and felt angry about his disability and family problems. His diagnosis was "mild to moderate" major depression and alcohol abuse. The doctor prescribed some medication and referred him to social services. Plaintiff went to follow-up appointments in the psychiatry clinic, under Dr. Shenoy's supervision, including a more extensive intake visit in January 2002. There he was diagnosed with major depression with paranoid

3

features, issued a Global Assessment of Functioning ("GAF") score of 52, and prescribed additional medication. Dr. Shenoy noted that it was too early to tell whether plaintiff would respond to treatment. Plaintiff saw Dr. Shenoy again in May and July 2002 where he reported compliance with his medication, but no significant improvement in his mood. Dr. Shenoy increased the dose of his medications. The record indicates plaintiff had additional appointments with Dr. Shenoy in September and December of 2002, but does not include notes from those visits.

In January 2002, plaintiff's attorney had him evaluated by Dr. Michael Rogers, a psychiatrist. He was diagnosed with major depressive disorder with psychotic features, residual pain and compartment syndrome of the right foot, obesity, and a GAF score of thirty. Dr. Rogers found plaintiff's mental symptoms were under control with medication (*e.g.*, previously prescribed Zoloft and Zyprexa), but recommended an increase in dosage of the Zyprexa in light of plaintiff's continued feelings of persecution.

In May 2002, pursuant to ALJ Templin's order, plaintiff's mental status and personality were evaluated by Dr. Gregory Rudolph, a psychologist. Dr. Rudolph found plaintiff's depression and psychotic features in remission, noting that he had a history of drinking heavily but that he was no longer using alcohol. Plaintiff's mood was described as mildly depressed and subdued, he reported no current thought disturbances, and his formal mental

status examination findings were essentially normal.  Dr. Rudolph also noted that test results from plaintiff's Minnesota Multiphasic Personality Inventory ("MMPI") exam were invalid in a manner suggesting he embellished his reported neurotic and psychotic symptoms.

Dr. Blaise Wolfrum, a psychiatrist appointed by the worker's compensation insurance defense attorney, examined plaintiff for one hour in August 2002 and submitted a report.  The report indicated that plaintiff sustained a mental injury and emotional response to his physical disability, and that he may have had features of an intermittent explosive disorder previously, but those features were not present during the exam.  Plaintiff reported compliance with medication to Dr. Wolfrum and admitted drinking heavily until two months prior to the evaluation.  Dr. Wolfrum noted some paranoia and suspiciousness, but no hallucinations or active suicidal or homicidal ideations or plans.  Plaintiff also told Dr. Wolfrum he was homeless even though he was actually living in subsidized housing at the time.  The report indicated a GAF score of forty, noting that plaintiff was unable to maintain relationships with friends or work.  Dr. Wolfrum opined that plaintiff could function in a workplace without significant restrictions.  He also relayed plaintiff's complaints of drowsiness (attributing it to the medication) and explained that it could negatively impact

5

plaintiff's ability to work.[1]

Plaintiff began treatment with Dr. Leonard Elkun, a psychiatrist referred by his orthopedic specialist, in April 2003. Dr. Elkun diagnosed plaintiff with chronic depressive disorder and delusional disorder, and prescribed him the same medication prescribed by plaintiff's previous doctors. In July 2003, Dr. Elkun wrote plaintiff's insurance carrier, stating that plaintiff was "totally disabled" due to psychological distress and chronic physical discomfort, but that he was compliant with medication, which seemed to alleviate his symptoms. After about a year of treatment, in May 2004, Dr. Elkun wrote a letter to plaintiff's attorney with a short summary of plaintiff's medical history, noting that plaintiff had anxiety disorder-generalized. That letter also stated that Dr. Elkun planned to continue treatment despite the fact that the insurance company already owed him four thousand dollars. In 2006, Dr. Elkun wrote another letter to the insurance carrier, which summarized the earlier letters but did not repeat the anxiety disorder diagnosis. The 2006 letter explained that plaintiff was making progress and was contemplating college-level studies.

In 2004, Northwest Airlines retained a psychologist, Dr. Mark

---

[1] Vocational Expert ("VE") Mr. Yep testified, among other things, that if a hypothetical person were taking daily psychotropic medications that caused him to become drowsy or lose concentration more than 15% of the time, there would be no available work for that person.

Mosk, to evaluate plaintiff. Like Dr. Rudolph, Dr. Mosk administered the MMPI test and found the results indicated exaggeration of plaintiff's symptoms. He diagnosed plaintiff with an unspecified depressive disorder, paranoid and dependent personality traits, and provisional diagnoses of alcohol abuse or dependence and malingering. Dr. Mosk doubted plaintiff's credibility and found that his emotional impairments were not related to his physical injury. He concluded that plaintiff could return to his past work from a psychological standpoint, but that his ongoing substance abuse and "interest in pursuing secondary gain serve as significant demotivating factors in returning to the open labor market." (R. 36.)

In her forty page decision, ALJ Cropper concluded that plaintiff's depression and alcohol dependence were severe, at least at some point during the relevant time period, but that the evidence did not show his impairments met the listing criteria. (R. 22-54.) She also found the record did not establish that plaintiff was drinking heavily during the period of disability from July 1999 through July 2000. And because there was no finding of disability after July 2000, the ALJ did not reach the issue of whether plaintiff's alcohol use was a contributing factor after the period of disability.

### III.

Judicial review is limited to determining whether substantial

7

evidence supports the findings of the Commissioner. 42 U.S.C. § 405(g). A reviewing court "will uphold an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence." *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pitts v. Sullivan*, 923 F.2d 561, 564 (7th Cir. 1991)(citations omitted).

The Commissioner is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)(citations omitted). Accordingly, a reviewing court "may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner." *Id.* If the Commissioner's decision lacks evidentiary support or such adequate discussion of the issues to afford meaningful appellate review, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## IV.

In his opening memorandum, plaintiff posits that the Commissioner's decision must be remanded for a new hearing, in front of a different ALJ, outside of Chicago, Illinois. Broken into seven separate assertions, plaintiff essentially contends that ALJ Cropper 1) did not sufficiently develop the record or support her decision on mental impairment, side effects of medication, and

8

substance abuse; and 2) failed to give the proper weight to evidence of the treating physicians, psychologists, psychiatrists, and vocational experts while improperly playing expert herself.[2] The determinations made as to plaintiff's physical disability, residual functioning capacity ("RFC"), and benefits are not challenged - only findings relating to mental impairment and substance abuse are at issue.

First, with respect to development of the record, plaintiff complains that ALJ Cropper did not have plaintiff evaluated by a psychologist or psychiatrist and that a mental health professional was not present at the hearing. The record included opinions from at least five psychiatrists/psychologists who either treated or evaluated plaintiff during the relevant period.[3] Additional evaluations and testimony were not necessary or required, and plaintiff cites no authority suggesting otherwise.

Plaintiff next argues that the record lacks evidence relating to side effects (*e.g.*, drowsiness) associated with his medication.

---

[2] Plaintiff also suggests the Appeals Council did not properly vacate its August 23, 2007 order to remand and therefore did not validly render its January 26, 2008 decision denying plaintiff's request for review of ALJ Cropper's 2006 decision. (Pl.'s Mem. 17.) This undeveloped and unsupported argument is waived. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.")(citations omitted).

[3] The specific diagnoses, evaluations, test results, and prescriptions are detailed in the ALJ's decision. (*See* R. 22-54.)

9

He contends, in error, it was ALJ Cropper's job to develop the record on that issue and not his. *See Scheck v. Barnhart*, 357 F.3d 697 F.3d 697, 702 (7th Cir. 2004)(it is plaintiff's burden to provide detailed evidence substantiating his allegations of impairment and functional limitations); 20 C.F.R. 404.1512(a)("In general, you have to prove to us that you are blind or disabled."). Plaintiff was represented by counsel. This presumes he made his best case. *See Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

The only medical evidence noted by plaintiff on the issue of side effects is the opinion of Dr. Wolfrum, who evaluated plaintiff on August 9, 2002. (R. 142-146.) Dr. Wolfrum opined that plaintiff's medications (Zoloft and Zyprexa) appeared to be helping his symptoms, but were also likely the source of his reported drowsiness, which could impair his ability to work. That opinion was based, in part, on plaintiff's reported compliance with medication and representations concerning the severity and impact of his symptoms, both of which were discredited by other objective evidence.

For example, prescription records show plaintiff did not fill prescriptions for Zoloft (depression medication) between April 1, 2002 and October 2002, or for Zaprexa (anti-psychotic) between January 8, 2002 and March 16, 2003. Plaintiff confirmed, by his own testimony, that he missed doses of his medication, took

10

medication with alcohol despite instructions not to do so, and failed to fill prescriptions - sometimes for several months at a time – all while reporting compliance with medication to his doctors. This evidence discredits Dr. Wolfrum's findings regarding both the "effectiveness" and negative side effects of plaintiff's medication.

Plaintiff's misleading reports of compliance with medication were also at issue in the ALJ's evaluation of plaintiff's other doctors. Although plaintiff argues that the ALJ only credited opinions that found no impairment, while disregarding the rest, the record does not support that contention. For example, the opinion of plaintiff's treating physician, Dr. Elkun, was partially discredited because he 1) did not prepare a formal Psychiatric Review Technique Form, 2) only provided limited progress notes for review despite the fact that he treated plaintiff for several years, 3) provided litigation-related summaries that did not fully support his opinion on disability, 4) held a financial stake in the outcome of plaintiff's worker's compensation case, and 5) issued opinions and adjusted medication doses under the assumption that plaintiff was compliant with medication, which was not the case. (*See* R. 23, 39-40.); *see also Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008)(explaining that an ALJ's decision to discount a treating physician's opinion stands if it was considered pursuant to the factors described in 20 C.F.R. 404.1527(d) and the ALJ minimally

11

articulated reasons for discounting the opinion). Plaintiff does not acknowledge this reasoning or explain why it is legally deficient.[4]

Additionally, plaintiff's complaints of mental and emotional impairment were found to be inconsistent with assessed GAF scores and his active social life. Three of his doctors assessed plaintiff in the moderately functioning range despite diagnoses of severe depression and varying psychoses.[5] The ALJ also noted that even though he reported pervasive depression, plaintiff maintained frequent contact with his three daughters, was heavily involved in the house music scene (spending significant time on research and preparation for a weekly internet broadcast with a high-school friend), was an active participant in various litigation matters (against his employer and the mother of his children), worked intermittently delivering pizzas, and often spent weekends with his long-term girlfriend in Chicago. (R. 40-48.) He also traveled out-of-state occasionally to visit friends and testified that, if not for financial constraints, he felt capable of returning to

---

[4] The Commissioner's response goes further, detailing the ALJ's treatment of each medical opinion, comparing it to the appropriate legal standard, and explaining why it meets that standard. (Def.'s Resp. 15-21.) Plaintiff does not substantively respond to any of the evidence or authority cited by the Commissioner in his reply. (*See* Pl.'s Reply.)

[5] Dr. Rogers and Dr. Wolfrum issued lower scores, but Dr. Wolfrum's low score was discredited as it took into account plaintiff's false representation of homelessness.

school. (R. 43, 46, 48.)

Additional record evidence further bolsters the ALJ's decision on impairment, RFC, and credibility. In separately administered MMRI tests, Dr. Mosk and Dr. Rudolph both found plaintiff's results "invalid" in such a way that suggested embellishment of symptoms. Dr. Rudolph's opinion also notes that plaintiff did not display any psychotic symptoms during the evaluation and described plaintiff's psychosis and depression as being in remission - this despite admitted spotty compliance with medication.[6] In fact, as noted in the ALJ's decision, the record shows plaintiff's paranoid delusions were based, at least in part, in reality; apparently, investigators were following and videotaping plaintiff in connection with his pending worker's compensation claim. (R. 21, 47.)

In sum, the ALJ's decision was substantially supported by the record evidence. No further development of the record was required. *See Nelson v. Sec'y of Health & Human Servs.*, 770 F.2d 682, 685 (7th Cir. 1985) (holding that ALJ could disbelieve testimony regarding side effects of medication that were not substantiated by any objective evidence), *overruled on other grounds as stated in Allen v. Smith*, 977 F.2d 385 (7th Cir. 1992).

Finally, for the first time in his reply brief, plaintiff includes short summaries of five cases presumably for the purpose

---

[6] Dr. Mosk's opinion went further and opined that plaintiff was malingering. The rehabilitation clinic also raised questions about plaintiff's motivation to return to work. (R. 26.)

13

of argument, although no actual argument is provided. Two of these cases do not include proper (or any) citations and a third is a state appellate court habeas case concerning mental fitness for trial. The remaining two cases address social security benefits for claimants with depression, but the similarities end there. (Pl.'s Reply. 8-9.)

For instance, in *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998),[7] the court reversed the denial of benefits and ordered the award of benefits because the ALJ improperly disregarded the only medical evidence provided - the opinion of an unbiased, court-appointed psychiatrist. In addition, the ALJ "tendered a bit of evidence of her own" and disregarded overwhelming non-medical evidence of disabling depression without rational explanation.[8] *Id.* at 804.

Similarly distinguishable is *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006). There, the Seventh Circuit vacated and remanded the ALJ's decision to deny benefits for two reasons: 1) the ALJ had rejected abundant medical testimony without giving adequate reasons

---

[7] Plaintiff refers to this case as "Wilder v. Chater," but the citation provided is actually for "Wilder v. Apfel."

[8] The *Wilder* claimant was so incapacitated by her depression that her children had to lay out clothes for her, pay her bills, and drive her a half-mile to work, where she sat all day without actually working; her only activities were smoking, watching television, going to the bathroom, and sleeping. *Id.* at 801-2, 804.

14

for doing so, and 2) the ALJ did not consider the possibility that plaintiff's transient job history was caused by her disorder. *Id.* at 629. Neither reason for remand applies here.

V.

For the foregoing reasons, I affirm the Commissioner's decision. Plaintiff's motion for summary judgment is denied. This case is dismissed.

        **ENTER ORDER:**

        *[signature]*
        **Elaine E. Bucklo**
        United States District Judge

Date: April 22, 2010